# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

UNITED STATES OF AMERICA,                    )
                                             )
                              Plaintiff,     )        Case No. 2:09-cr-00011-RLH-GWF
                                             )
vs.                                          )        **FINDINGS & RECOMMENDATIONS**
                                             )
GREGORY WILSON,                              )
                                             )        **Defendant's Motion to Suppress**
                              Defendant.     )        **Evidence for Fourth Amendment**
_____)        **Violation (#17)**

    This matter is before the Court on Defendant Gregory Wilson's Motion to Suppress Evidence for Fourth Amendment Violation (#17), filed on July 22, 2009; the Government's Response to Motion to Suppress (#18), filed on July 31, 2009; and Defendant's Reply to Government's Response to Motion to Suppress (#22), filed on August 10, 2009.   Also before the Court is Defendant's Memorandum (Motion) in Support of *Franks* Evidentiary Hearing (#32), filed on September 16, 2009 and the Government's Response to Motion for a Franks Hearing (#34), filed on September 19, 2009.  The Court conducted a hearing on these motions on September 21, 2009.

    Defendant Wilson moves for suppression of evidence that was seized pursuant to a search warrant that was issued by a Justice of the Peace of Clark County, Nevada on April 17, 2006 on the grounds that the search warrant was not supported by probable cause.  In addition, Defendant argues that the affidavit in support of search warrant contained intentional or reckless misstatements or omissions of fact, and that but for the misrepresentations or omissions, probable cause would not have existed to support the issuance of the search warrant.  Accordingly, Defendant requested that the Court conduct a *Franks* evidentiary hearing prior to deciding the motion to suppress.

. . .

**FACTUAL BACKGROUND**

Defendant Wilson is charged in the Indictment (#1) with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  This charge arises out of an incident on April 15, 2006 during which the Las Vegas Metropolitan Police investigated a report from an anonymous Spanish speaking telephone caller that a black male was banging on her apartment door at 1910 Ferrell Street and that he had a gun.  As patrol units were responding to the call, the police dispatch received another anonymous call from the same apartment complex stating that a male was being choked and held over the railing by a black male adult wearing a blue cap, white shirt and black pants.  *Motion to Suppress (#17), Exhibit "A"*, April 17, 2006 Affidavit for Search Warrant by Detective J. Flink (hereinafter "*April 2006 Affidavit*"), page 2.  When Police Officer Burns arrived at the apartment complex, he observed a man who matched the description of the black male walking away from 1910 Ferrell in the desert area just south of the apartments.  Officer Burns instructed the man, who was later identified as Defendant Wilson, to stop and step to the front of his patrol vehicle.  Defendant responded "No!" and took off running.  Officer Burns and another officer pursued the Defendant on foot during which time they observed him remove a large frame handgun from his clothing and continue to run while holding the gun in his right hand.  As the pursuit continued, the Defendant dropped the gun in the desert.  He fled into a home at 1606 Ferrell Street.  After a brief stand-off, Defendant surrendered and was taken into custody.  *April 2006 Affidavit*, pages 2-3.

After Defendant was taken into custody, his girlfriend, Susan Ross, arrived at the scene.  She informed the officers that she had accompanied the Defendant to 1910 Ferrell Street to confront a Hispanic male about his stealing from their backyard.  Ms. Ross stated that the conversation became heated and the Hispanic male produced a gun which Defendant wrestled away and then took when they heard police sirens approaching.  *April 2006 Affidavit*, page 3.

The officers determined that Defendant was a convicted felon and that the handgun he discarded was stolen.  Defendant was arrested for felon in possession of firearm, carrying a concealed weapon and possession of a stolen firearm.   Defendant agreed to waive his *Miranda* rights and speak to the officers.  He told the officers that he and his girlfriend had walked from Defendant's residence at 1721 Ferrell Street to the apartments across the street to purchase "weed," i.e., marijuana.  The Hispanic male from

2

1    whom Defendant had purchased marijuana in the past became enraged with him for some unknown

2    reason and produced a gun.  Defendant told the officers that he wrestled the gun away from the

3    Hispanic male.  *April 2006 Affidavit*, pages 3-4.

4          According to Detective Flink's affidavit, patrol officers went to the area where the incident

5    occurred, but could not find a victim or anyone who would admit to having witnessed the incident.

6    Detective Flink stated that the apartment complex was known for narcotics sales and other criminal

7    acts.  She stated that it was not unusual for the police to be called to help in volatile situations, but for

8    the callers to be uncooperative with the police when they arrived.  Detective Flink noted that in the

9    subject incident, the callers had refused to give their names.  *April 2006 Affidavit*, page 4.

10         Detective Flink further stated in her affidavit:

11             During your affiants interview with Wilson he stated that he lived at 1721
               Ferrell.  As your affiant conducted follow up to confirm or deny this
12             information your affiant found that a search warrant was served at that
               address under event 060303-1361.  Wilson was the target of the search
13             warrant and believed to be a narcotics dealer.  This was based on the fact
               that narcotics were found in his bedroom, owe sheets and scales were
14             found through out the residence and recorded LVMPD buy money was
               found in Wilson's pocket along with over $4,000 in cash, which was
15             broken down into 179 $20, 12 $10 bills, 31 $5 bills, 82 $1 bills and 4
               $100 bills.
16
               Your affiant then contacted Ofc. L Cody P#7294, who was the affiant of
17             this search warrant to learn details of the investigation.  Ofc. Cody stated
               that along with the confidential informant drug buy she had been told that
18             Wilson carried a handgun on his person when conducting his drug trade
               and was also told that there was a shotgun in the house as well.  Though
19             they did not find any firearms during the service of their search warrant
               shotgun shells were found.
20

21    *April 2006 Affidavit*, pages 4-5.

22         Detective Flink's affidavit also discussed the characteristics of ex felons who illegally possess

23    firearms, including the detective's belief that prohibited persons tend to keep such firearms for a long

24    time  and tend to collect accessories for firearms such as holsters, cleaning kits, extra magazines and

25    firearm parts. *April 2006 Affidavit*, pages 5-6.  The detective therefore sought and obtained a warrant

26    that authorized the officers to search Defendant's residence and seize ammunition, all firearm related

27    accessories, including holsters, cleaning kits, gun parts, magazines, etc., receipts for firearms,

28    ammunition, and other firearm related accessories, and limited items of personal property which would

                                                   3

1    tend to establish ownership over the seized items.  *Motion to Suppress (#17), Exhibit "A", April 2006*

2    *Affidavit,* page 1;  *Search Warrant*, page 1.  According to the return for this search warrant, the officers

3    seized a gun cleaning kit in a red and black bag from Defendant Wilson's residence.  *Motion to*

4    *Suppress (#17), Exhibit "C."*

5            After the instant *Motion to Suppress (#17)* was filed, Defendant's counsel obtained a copy of the

6    March 2006 search warrant for the premises at 1721 Ferrell Street and Officer Cody's affidavit in

7    support of the issuance of that search warrant.  *Defendant's Memorandum in Support of Franks*

8    *Evidentiary Hearing (#32), Exhibits "A"* and  *"B."*  According to Officer Cody's affidavit, in late

9    February 2006, he received complaints of suspected narcotic activity in the area of 1721 Ferrell Street.

10   He was informed that the suspected activity was occurring at all hours of the day or night.  The

11   officer(s) arranged for a confidential informant (CI), who had been arrested in the past for drug related

12   offenses and who was working with the police for consideration on criminal charges, to make a control

13   buy of narcotics from the residence at 1721 Ferrell Street.  Prior to the controlled buy, the CI was

14   thoroughly searched to ensure that he/she did not have any controlled substances or money in his/her

15   possession.  The CI was then provided with police buy money to be used to purchase cocaine from the

16   suspect residence.  While under police surveillance, the CI approached the door of 1721 Ferrell Street

17   and was admitted inside by a black male.

18           The CI then left the residence, returned to the police surveillance vehicle and handed over

19   cocaine which the CI stated he/she purchased inside the residence.  The CI was again searched and no

20   other controlled substances or money was found on his/her person.  According to Officer Cody's

21   affidavit, the CI described to the officers the drug purchase he made from a black male inside the

22   residence whom the CI knew as  "G".  The affidavit further stated:  "CI went on to state to your affiant

23   that CI had seen a short barreled rifle and a chrome plated small handgun."  *Memorandum (#32),*

24   *Exhibit "B", March 3, 2006 Affidavit,* page 4.  The search warrant issued pursuant to this affidavit

25   authorized the police to seize controlled substances, drug paraphernalia, documents establishing

26   ownership of the seized items, currency and "unknown firearms and related items."  *Memorandum*

27   *(#32), Exhibit "A", Search Warrant.*

28   . . .

1   According to the police reports and property inventory for the March 3, 2006 search warrant, the

2   officers found and seized cocaine, marijuana, U.S. currency, a digital scale, owe sheet, a Nevada Power

3   bill, bank paperwork,  miscellaneous paperwork, a photograph and identification documents for

4   Gregory Wilson.  *Motion to Suppress (#17), Exhibit "B"*; *Memorandum (#32), Exhibit "A".*  The

5   police reports and search warrant inventory made no reference to shotgun shells either being found or

6   seized during the March 3, 2006 search.

7                                                **DISCUSSION**

8   Defendant argues that the Court should grant a *Franks* evidentiary hearing on the issue of

9   whether Detective Flink's affidavit contained intentional or reckless misstatements or omissions of fact.

10   Specifically, Defendant asserts that Detective Flink's statement that she was informed by Officer Cody

11   that shotgun shells were found during the March 3, 2006 search of Defendant's residence was false and

12   that but for that false statement, probable cause would not have existed to support the issuance of the

13   April 2006 search warrant.

14    In *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the Supreme

15   Court held that the Fourth Amendment entitles a defendant to challenge the constitutional validity of a

16   search warrant if the defendant makes a substantial preliminary showing that (1) the affidavit in support

17   of the warrant contains intentionally or recklessly false statements and (2) the affidavit purged of its

18   falsities would not be sufficient to support a finding of probable cause.  *See United States v. Martinez-*

19   *Garcia*, 397 F.3d 1205, 1215 (9th Cir. 2005), *citing United States v. Reeves*, 210 F.3d 1041, 1044 (9th

20   Cir. 2000).  To justify an evidentiary hearing, the defendant is required to make a substantial

21   preliminary showing that the affidavit contains intentionally or recklessly false statements and that

22   probable cause to support the issuance of the warrant would not have existed without the false

23   statements.  *Franks,* 438 U.S. at 171-172.  If a hearing is granted, the defendant has the burden of

24   proving by a preponderance of the evidence that the false statements were deliberately made or were

25   made with a reckless disregard for the truth.  *United States v. DeLeon*, 955 F.2d 1346, 1348 (9th Cir.

26   1992).

27   Evidence of intentional or reckless omissions of fact may also provide grounds for a *Franks*

28   hearing.  *United States v. Jawara*, 474 F.3d 565 (9th Cir. 2007) states in this regard as follows:

"A search warrant, to be valid, must be supported by an affidavit establishing probable cause." *United States v. Stanert,* 762 F.2d 775, 778 (9th Cir.1985).   In *Stanert,* we applied the rationale of *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), to hold that a defendant could challenge a facially valid affidavit by making a substantial preliminary showing that "the affiant intentionally or recklessly omitted facts required to prevent technically true statements in the affidavit from being misleading." *Stanert,* 762 F.2d at 781 ("By reporting less than the total story, an affiant can manipulate the inferences a magistrate will draw.   To allow a magistrate to be misled in such a manner could denude the probable cause requirement of all real meaning.")   In addition, the defendant must show that the "affidavit, once corrected and supplemented," would not "provide ... a substantial basis for concluding that probable cause existed" to search defendant's residence. *Id.* at 782.

*United States v. Stanert,* 762 F.2d 775, 781 (9th Cir. 1985) also states that in deciding whether to grant an evidentiary hearing, "[c]lear proof of deliberate or reckless omission is not required. *See United States v. Chesner,* 678 F.2d 1353, 1362 (9th Cir. 1982).  Such proof is reserved for the evidentiary hearing."   *See also United States v. Gonzalez, Inc.*, 412 F.3d 1102, 1111 (9th Cir. 2005).  The Seventh Circuit has stated that Defendant "must offer direct evidence of the affiant's state of mind or inferential evidence that the affiant had obvious reasons for omitting facts in order to prove deliberate falsehood or reckless disregard." *United States v. Souffront,* 338 F.3d 809, 822-23 (7th Cir. 2003).  Deliberate intent to deceive or reckless disregard for the truth can be inferred from the omission of material facts that would have negated probable cause.  The "omission rule," however, does not require that the affidavit provide general information about every possible theory that would controvert the affiant's good faith assertion of probable cause. *United States v. Craighead*, 539 F.3d 1073, 1081 (9th Cir. 2008).

Notwithstanding the relatively light burden that a defendant must satisfy to obtain an evidentiary hearing, Defendant Wilson has not made the required showing in this case.  Defendant argues that because the property inventory and police reports for the March 3, 2006 search make no mention that shotgun shells were found during the search, it is reasonable to infer that the statement in Detective Flink's April 2006 affidavit that shotgun shells were found is false.  The Government argues, however, that the March 3, 2006 search was conducted by local Nevada law enforcement officers and not federal agents.  Unlike federal criminal statutes governing convicted felons, Nevada's criminal statutes do not prohibit the possession of ammunition by convicted felons.  *See* Nevada Revised Statute (NRS)

6

1   §202.360.  The Government therefore argues that it is not suspicious or unusual that the police would

2   not have seized the ammunition or necessarily noted its presence in their reports.  The Court also notes

3   that the March 2006 search warrant was directed at the seizure of evidence of narcotics trafficking.

4   Although the warrant authorized the seizure of "unknown firearms and related items," evidence of

5   firearms ownership was not the primary focus of the March 2006 search.  The other information in

6   Officer Cody's March 3, 2006 affidavit is also largely consistent with the information that he later

7   reportedly provided to Detective Flink, including the informant's statement that he observed two

8   firearms in the residence.  This further detracts from an inference that Officer Cody's reported

9   statement that ammunition was found during the March 2006 search was false.  The Court therefore

10  finds that Defendant has not produced any evidence or information which would reasonably support a

11  finding that the statement that shotgun shells were found during the March 2006 search of Defendant's

12  residence was false or that Detective Flink's inclusion of that information in the April 2006 affidavit

13  was done with an intentional or reckless disregard for the truth.

14      Even if the Court assumed that the statement that shotgun shells were found during the March 3,

15  2006 search was false, Defendant has also failed to satisfy the second prong of the *Franks* test that

16  absent this false information, probable cause would not have existed to support the issuance of the

17  search warrant.  Probable cause means a "fair probability" that contraband or evidence is located in a

18  particular place.  Whether there is a fair probability depends upon the totality of the circumstances,

19  including reasonable inferences, and is a "commonsense, practical question."  Neither certainty nor a

20  preponderance of the evidence is required.  *United States v. Kelley*, 482 F.3d 1047, 1050-51 (9th Cir.

21  2007), citing *Illinois v. Gates,* 462 U.S. 213, 246,  103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) and *United

22  States v. Gourde,* 440 F.3d 1065, 1069 (9th Cir. 2006) (en banc).

23      In this case, the police responded to an anonymous telephone call from someone in the

24  apartment complex at 1910 Ferrell Street that a man was banging on her door and had a gun.  Before

25  the police arrived, they received a second anonymous call that a man was being choked and held over

26  the rail by a black adult male wearing a blue cap, white shirt and black pants.  Upon arriving, the police

27  officer observed the Defendant, who matched the description of the black male described in the second

28  call, in the desert area near the apartment  complex.  The officer told Defendant to stop and to step in

1   front of his patrol vehicle.  Defendant, however, ran away from the officers.  During the pursuit, the

2   Defendant removed a handgun from his waistband and dropped it in the desert.  Defendant then fled

3   into a third person's residence, but ultimately surrendered to the police.  After taking Defendant into

4   custody, the officers determined that he was a convicted felon and that the handgun he discarded was

5   stolen.  Both Defendant and his girlfriend told the police, however, that Defendant had taken the

6   handgun during the altercation with the unidentified Hispanic man at the apartment complex.

7          The fact that Defendant fled after being instructed to stop by the police officer provided the

8   officers with reasonable suspicion to believe that Defendant was engaged in criminal activity.  *See*

9   *Illinois v. Wardlow*, 528 U.S. 119, 120 S.Ct. 673, 676 (2000).  The fact that Defendant discarded the

10  handgun while attempting to flee from the officers, the subsequent discovery that he was a convicted

11  felon and that the handgun was stolen, were clearly sufficient to establish probable cause to believe that

12  Defendant had committed the crimes of possession of a firearm by a convicted felon and/or possession

13  of a stolen firearm.  Under the circumstances, the police were not obligated to believe or give credence

14  to Defendant's and his girlfriend's statements as to how he came to possess the firearm.  The police

15  sought the search warrant for Defendant's residence to look for evidence that would connect him to

16  ownership or possession of the handgun such as ammunition, firearm related accessories and

17  documentation relating thereto.   Even without information regarding the prior March 2006 search, the

18  foregoing facts were sufficient to establish probable cause to search Defendant's residence for such

19  evidence.

20         The information in Detective Flink's April 2006 affidavit regarding the March 3, 2006 search

21  provided additional reasons to believe that evidence of firearm possession or ownership would be found

22  in Defendant's residence.  The accuracy of most of that information is not disputed by the Defendant.  It

23  is undisputed, for example, that the police obtained the earlier search warrant based on information that

24  narcotics were being sold from the residence.  That fact, alone, tended to increase the probability that

25  firearms were located in the residence since persons engaged in illegal narcotics trafficking are more

26  likely to be armed than law abiding citizens.  *See United States v. Carrasco*, 257 F.3d 1045, 1048 (9th

27  Cir. 2001) ("Firearms are known tools of the trade of narcotics dealing because of the danger inherent

28  in that line of work.").  *See also United States v. Fernandez*, 526 F.2d 1247, 1253 (9th Cir. 2008).

According to Officer Cody's March 2006 affidavit, the confidential informant also advised the police that he observed a short barreled rifle and a chrome plated small handgun in the residence during the March 2006 drug purchase.  According to Detective Flink's April 2006 affidavit, Officer Cody told her "that along with the confidential informant drug buy she had been told that Wilson carried a handgun on his person when conducting his drug trade and was also told that there was a shotgun in the house as well." *April 2006 Affidavit*, page 5.  Officer Cody also reportedly stated, however, that the police did not find any firearms during the search warrant, but did find shotgun shells. *Id.*  The March 2006 search took place only a month and a half before Defendant's arrest on April 15th and therefore provided some additional basis to believe that firearms or evidence thereof would be found in Defendant's residence.

Even if Detective Flink's affidavit was modified or corrected to state only that the confidential informant informed the officers that he observed a handgun and a short barreled firearm in the residence during the March 2006 transaction, but that the officers did not find any weapons during the earlier search, the Court would still conclude that there was probable cause to support the issuance of the April 2006 search warrant.  As stated above, the search warrant was justified by the information that the officers obtained during the April 15, 2006 incident.  The information regarding the earlier search provided only additional information to support the issuance of the warrant.  Even absent the possibly inaccurate information that shotgun shells were found during the earlier search, probable cause would still have existed to support the issuance of the April 2006 warrant.

## CONCLUSION

Defendant has failed to make a substantial preliminary showing that information contained in Detective Flink's April 2006 affidavit was false or that any alleged misrepresentation or omission in that affidavit was made with an intention to deceive the issuing judge or with reckless disregard for the truth.  Secondly, even if the allegedly false information had not been included in the April 2006 affidavit, the Court would still find that probable cause existed to support the issuance of the search warrant.  Accordingly,

. . .

. . .

9

**<u>RECOMMENDATION</u>**

**IT IS RECOMMENDED** that Defendant's Motion to Suppress Evidence for Fourth Amendment Violation (#17) and Defendant's request for a *Franks* Evidentiary Hearing, *Memorandum* (#32) be **denied.**

**NOTICE**

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within ten (10) days.  The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time.  *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court.  *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 29th day of September, 2009.

GEORGE FOLEY, JR.
United States Magistrate Judge

10